IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:15-CR-225-1 |
| | ) | |
| HUMPHREY HENRIQUEZ, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Humphrey Henriquez, has filed a motion for sentence reduction pursuant to what is commonly known as the compassionate release provision in 18 U.S.C. § 3582(c)(1)(A). Mr. Henriquez asks the Court to reduce his sentence to time served based on the need to care for his elderly and infirm parents and his exceptionally successful rehabilitation. The defendant's family circumstances taken together with his successful rehabilitation constitute extraordinary and compelling reasons for a sentence reduction, and the § 3553(a) factors also support early release, if additional conditions of supervised release are added. Mr. Henriquez's motion for a sentence reduction to time served will be granted.

I. Background

On September 9, 2015, Mr. Henriquez pled guilty to one count of possession with intent to distribute 28 grams or more of cocaine base and one count of possession of firearms in furtherance of a drug trafficking crime. Minute Entry 09/09/15; Doc. 16. Soon thereafter, the court sentenced him to sixty months on each count to run

consecutively, for a total of 120 months imprisonment, Minute Entry 02/03/2016; Doc. 22, which was the statutory minimum. *See* Doc. 21 at ¶ 63. Mr. Henriquez did not appeal.

In June 2021, Mr. Henriquez filed this motion for compassionate release. Doc. 24. The Court appointed counsel, allowed the defendant to submit additional evidence and supplemental briefing, ordered the Probation Office to file a supplemental report, and directed the government to respond if it objected. Doc. 25. Briefing is now complete.

## II. Facts

In 2015, Mr. Henriquez was indicted on drug and firearm charges. Doc. 1. He pled guilty to one count of conspiracy to distribute 28 grams or more of cocaine base and one count of possession of a firearm in furtherance of a drug trafficking crime. Doc. 16 ¶¶ 1-2. Additional facts about his criminal history and these offenses will be discussed *supra*. Consistent with recommendations in the plea agreement, Doc. 16 ¶ 5(c), the Court sentenced him to ten years in prison. Doc. 22.

Mr. Henriquez is now 48 years old. Doc. 21 at 3.[1] He has been in custody since November 2014, *id.* at 1, and has thus served roughly 70% of his sentence.

---

[1] The Court adopted the presentence investigation report, Doc. 21, without change, Doc. 23 at 1, establishing the facts therein as reliable. In post-conviction matters related to sentencing, courts may consider any reliable information, just as they would during an initial sentencing proceeding. *See United States v. Clark*, No. 1:19-CR-152-1, 2021 WL 1254477, at *2 (M.D.N.C. Apr. 5, 2021); *see also Greer v. United States*, 141 S. Ct. 2090, 2098 (2021) (holding that in the context of plain-error review on direct appeal, the court may consider any relevant reliable information from the entire record, including the presentence report).

2

Mr. Henriquez has had no meaningful disciplinary or behavioral issues while incarcerated.[2] He has completed many educational offerings, Doc. 24 at 26, and has paid the special assessment. Doc. 28 at 2. He has worked steadily in prison work programs, Doc. 24 at 18, earning accolades from his civilian supervisors. *Id.* at 19–20.

Six counselor and supervisors at the prison recommend him for early release, *id.* at 16–21, including the officer in charge of the prison camp where Mr. Henriquez is housed. *Id.* at 18. During his incarceration, he has shown a positive and respectful attitude, mentored younger offenders, and worked hard in prison jobs. *See, e.g.*, *id.* at 18. He has continued to accept responsibility for his crimes and to show remorse. *Id.* at 18, 21.

The defendant's mother is 79 years old and wheelchair-bound due to an accident injuring her spinal cord. Doc 32-1 at 5; Doc. 21 at ¶ 48. She suffers from diabetes, spondylosis (arthritis of the neck), radiculopathy (pinched nerves), osteoporosis, muscle atrophy, cataracts, venous insufficiency, a pressure ulcer, and congenital heart disease. *See* Doc. 32-1 at 1–2, 5. She relies on over 15 prescription medications. *Id.* at 1. According to undisputed evidence from her primary care physician, the defendant's mother "has difficulty ambulating and needs help with all her activities of daily living" due to her "chronic medical conditions." *Id.* at 5. The defendant's half-sister in Rhode Island reports that their mother receives seven hours of daily assistance from a home health aide. Doc. 33 at 12.

---

[2] His record does show two related infractions recently, Doc. 28, but the record is clear that he had a medical excuse for not working that had not been conveyed to guards. The infractions remain on his record only because he did not comply with technical requirements imposed by the BOP when objecting to an infraction. *See* Doc. 24 at 25; Doc. 34-1.

3

The defendant's father is 77 years old and also has multiple health problems. He suffers from diabetes, chronic atrial fibrillation, non-rheumatic mitral valve disorder, acute chronic combined systolic and diastolic heart failure, and chronic kidney disease, and he has had a stroke in the past. Doc. 32-1 at 3–4, 6. He has had at least three heart attacks. Doc. 21 at ¶ 48. According to undisputed evidence from his primary care physician, the defendant's father also "needs help with all his activities of daily living." Doc. 32-1 at 6.

Mr. Henriquez's parents live together in Rosedale, New York. *Id.* at 7. The defendant has one sister and five maternal half-siblings. Doc. 21 at ¶ 49; *see also* Doc. 32-1 at 7. Only his sister Hilda Henriquez lives near their parents; his half-siblings live out-of-state in North Carolina, Rhode Island, Georgia, Florida, and Indiana. Doc. 32-1 at 7.[3] At the time of sentencing, Mr. Henriquez's half-brother in Florida was retired but his other siblings were still working. Doc. 21 at ¶ 49. Given their reported ages, it seems likely this is still the case, though there is no evidence reflecting whether this is still true. There is no specific evidence explaining why these siblings are not available to aid their mother and, as to Ms. Hernandez, her father.

A half-brother in Georgia, Mr. Fritz-Gerald Delice, was involved in the parents' care when they lived in Georgia. Doc. 32-1 at 1–4. Mr. Delice told the probation office

---

[3] The defendant originally seemed to suggest that Hilda Henriquez lived with their parents, Doc. 24 at 8, but more recent information provided by Mr. Henriquez's half-brother, Mr. Fritz-Gerald Delice, shows that she now lives a few miles away. Doc. 32-1 at 7.

4

at the time of sentencing that "the family is extremely close," Doc. 21 at ¶ 51, and he has stayed in touch with Mr. Henriquez during his incarceration. Doc. 24 at 22.

When released, Mr. Henriquez plans to reside with his parents at their home in New York to provide live-in care and assistance with their activities of daily living. *Id.* at 5, 8; *see also* Doc. 28. The probation office in the Eastern District of New York has approved this residence as appropriate. Doc. 28.

### III.     Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the defendant must satisfy the exhaustion requirement. *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). The defendant must then show that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and that the relevant § 3553(a) sentencing factors do not counsel against early release. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). Even if the court finds extraordinary and compelling reasons support release, the court in its discretion may deny a defendant's motion after balancing the applicable § 3553(a) factors. *High*, 997 F.3d at 186.

### A. Exhaustion

Mr. Henriquez made a request for compassionate release to the warden in March 2021. Doc. 24 at 3, 13–15. The warden did not respond, *id.* at 3, and, as the government agrees, Mr. Henriquez has satisfied the exhaustion requirement. Doc. 36 at 4–5 n.1.

### B. Policy Statement

The Sentencing Commission has not yet adopted any policy statement applicable to motions filed directly by defendants. The existing policy statement applicable to motions filed by the warden, U.S.S.G. § 1B1.13, offers helpful guidance, but it is not binding and does not set a threshold requirement that Mr. Henriquez must meet. *McCoy*, 981 F.3d at 282 n.7. Instead, courts should consider "*any* extraordinary and compelling reason for release that a defendant may raise." *Id.* at 284 (emphasis in original).

### C. Extraordinary and Compelling Reasons

Mr. Henriquez has two elderly and ailing parents who both require assistance with their activities of daily living. They do not have live-in assistance, and he proposes his early release to provide that assistance. Doc. 32-1; Doc. 24 at 5, 8.

Under the non-binding Policy Statement, extraordinary and compelling reasons for compassionate release exist when an inmate is needed to care for a minor child after the death or incapacitation of the child's caregiver or is the "only available caregiver" for a spouse or "registered partner." U.S.S.G. § 1B1.13 n.(1)(C). Thus, the policy statement explicitly recognizes extraordinary and compelling reasons based on family circumstances, though the identified circumstances are narrower than those here.

Courts have recognized that serving as the caregiver for a close family member can be an extraordinary and compelling reason supporting compassionate release. *See e.g.*, *United States v. Hicklin*, No. 6:16-CR-2, 2020 WL 7406791, at *2 (W.D. Va. Dec. 11, 2020); *United States v. Bucci*, 409 F. Supp. 3d. 1, 2 (D. Mass. 2019). But courts in the Fourth Circuit have generally denied compassionate release on these grounds when other caregivers are available. *See, e.g.*, *United States v. Smith*, No. 3:15CR101, 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2021) (denying compassionate release where others could care for the defendant's ill father); *United States v. Allen*, No. 4:13-CR-00024, 2021 WL 3025458, at *3 (W.D. Va. July 16, 2021) (denying compassionate release where the defendant alleged neither that his mother was incapacitated nor that he was her only available caregiver); *United States v. Hargrove*, No. 3:17-CR-167-MOC-DCK-1, 2021 WL 2210844, at *4 (W.D.N.C. June 1, 2021) (denying compassionate release where defendant sought to care for arthritic mother who lived with the defendant's brother and the defendant had other living siblings); *United States v. Hooks*, 2021 WL 796156, at *3 (W.D.N.C. Mar. 2, 2021) (denying compassionate release where defendant sought to care for mother with terminal cancer diagnosis); *compare with Hicklin*, 2020 WL 7406791, at *2 (granting compassionate release where the defendant was the only possible caregiver for a severely ill parent who also supported the defendant's disabled adult sister, and the defendant's other sibling was unavailable).

The Court agrees with the emerging consensus in the district courts that a mere desire to assist an aging parent is not an extraordinary and compelling circumstance and that the availability of other family members to provide needed care is an important

7

factor. While it is undisputed that his parents are elderly and infirm, that they need more care and assistance than they currently receive, and that they would benefit by having Mr. Henriquez live with them to provide this care and assistance, it is also undisputed that Mr. Henriquez's mother has daily help for several hours from a home health aide and his sister lives near their parents. There is no evidence to explain why the many other siblings cannot help from time to time, despite jobs and distance. These circumstances are not, by themselves, extraordinary.

Congress has specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence reduction. 28 U.S.C. § 994(t). However, the Fourth Circuit has recognized successful rehabilitative efforts as "one among other factors under § 3582(c)(1)(A)(i)" that support finding extraordinary and compelling reasons to grant relief. *McCoy*, 981 F.3d at 286 n.9 (upholding rehabilitation, shown through education, vocational achievements, and payment of restitution, as a factor contributing to extraordinary and compelling reasons for sentence reduction). Thus, rehabilitation is not only a § 3553(a) factor, but it can also be considered at the extraordinary and compelling reasons stage of analysis in conjunction with other facts and circumstances. *Id.*

Over seven years of incarceration, Mr. Henriquez has maintained a nearly spotless disciplinary record. Doc. 21 at 1; Doc. 28 at 1. He has made positive impressions on many who have interacted with him throughout his time in custody, and six BoP employees wrote in support of his request for a sentence reduction before involvement of counsel. This alone is extraordinary.

8

For example, BoP Camp Counselor Hudson writes Mr. Henriquez "has always been a hard working individual" who routinely accomplishes a volume of work normally assigned to three or four people and is "ready for society." Doc. 24 at 16. Correctional Officer Gordon describes Mr. Henriquez as a person who "works hard, stays out of trouble and carries [himself] in a polite, respectable manner . . . [and] present[s] [himself] with levelheadedness and grace." *Id.* at 17. Senior Officer Young, the Officer in Charge at FPC Atlanta where Mr. Henriquez is housed, calls him a "Model Inmate," *id.* at 18, as does Senior Officer Specialist Phillips. *Id.* at 21.

Mr. Henriquez's work supervisors are also supportive. T. Howard, the Plumbing Supervisor, says Mr. Henriquez has an eagerness to work, does not complain, and willingly takes on new tasks outside his comfort zone. *Id.* at 19. A. Smith, the Materials Handler Supervisor, concurs about Mr. Henriquez's work ethic and describes Mr. Henriquez as "intelligent, motivational and inspirational." *Id.* at 20.

In comments worth quoting at length because of their specificity, depth, and breadth, Senior Officer Young says:

> [Mr. Henriquez] has stayed gainfully employed working in departments such as recycling, facilities, the visiting room and the cafeteria. Sometimes occupying two duties simultaneously. By enrolling in and completing numerous programs, Mr. Henriquez has enthusiastically shown a yearning for self-improvement. His resume boasts certificates and certifications in courses such as Job Readiness, Managing Your Finances and Adjusting Your Attitude, respectfully. He has even taken up piano. He also mentors younger offenders . . . These actions will absolutely assist him upon his return to society. . . . It is my sincerest opinion Mr. Hernandez is a strong candidate for consideration for the compassionate release program.

9

*Id.* at 18. Given this record, it is difficult to see any rehabilitation needs that would be served by two more years in prison.

Taken together, Mr. Hernandez's model behavior in prison, his unusually deep efforts at successful rehabilitation, his work ethic, the support of a significant number of BoP employees with personal knowledge of his situation, his family circumstances, and the length of the sentence he has already served constitute extraordinary and compelling circumstances. The Court so finds.

### D. Section 3553(a) Considerations

Even if the court finds extraordinary and compelling reasons to support release, the court in its discretion may deny a defendant's motion after balancing the applicable § 3553(a) factors. *High*, 997 F.3d at 186. The government here recognizes that "[Mr.] Henriquez's motion presents strong § 3553(a) grounds," Doc. 36 at 12, and does not object to his release on the basis of the § 3553(a) factors. *Id.* at 2. The Court agrees that the relevant § 3553(a) factors support a sentence reduction.

As a younger man, Mr. Henriquez committed many drug-related crimes, ultimately leading to a habitual felon conviction in state court. His criminal history began with a cocaine conviction under a false name at age 16, for which he was given a three-year suspended sentence. Doc. 21 at ¶ 30. At ages 17 and 19, the defendant again pled guilty to cocaine related offenses. *Id.* at ¶¶ 31–32. At age 21, a jury found Mr. Hernandez guilty of felony trafficking by possession of more than 28 grams of cocaine; the court sentenced him to 35 to 42 months of imprisonment, and Mr. Hernandez served over two years of that term. *Id.* at ¶ 33. Three years after his release from imprisonment,

10

Case 1:15-cr-00225-CCE   Document 38   Filed 12/06/21   Page 10 of 13

Mr. Hernandez pled guilty to another cocaine-related drug charge and a state charge of habitual felon due to his three previous felony drug convictions. *Id.* at ¶ 35. These charges were consolidated for judgment with other offenses including felon in possession of a firearm, and the court sentenced Mr. Hernandez to 60 to 81 months of imprisonment. *Id.* at ¶¶ 35–36.

After his 2006 release, Mr. Hernandez successfully completed his post-release supervision. Doc. 21 at ¶ 36. He stayed out of serious trouble until the 2014 offense that led to his current incarceration. *See id.* at ¶¶ 38–40, 44 (showing two misdemeanor convictions and a dismissed felony charge during this time frame.). But his extensive criminal history made it clear that a lengthy sentence was appropriate to provide suitable punishment.

The nature and circumstances of Mr. Henriquez's current offense also establish the need for a lengthy sentence. He sold drugs on numerous occasions, possessed more than 28 grams of cocaine along with a firearm to further his drug activities, and he possessed three firearms when he was arrested. *Id.* at ¶ 3–7, 9. The plea agreement called for dismissal of other charges, including a possession of a firearm by a felon count. Doc. 16 ¶ 5(a). Mr. Henriquez told law enforcement that he resold cocaine base daily and he had bought guns off the street to protect himself. Doc. 21 at ¶ 11.

The Court imposed a substantial 120-month sentence, as required by statute given applicable statutory minimums. Doc. 22. This long sentence reflected the seriousness of the offense and was consistent with the recommendations in the plea agreement. Doc. 16 at ¶ 5.

11

Mr. Hernandez has now been imprisoned for seven years—a significant length of time. *See* Doc. 21 at 1 (showing detention since November 20, 2014). Given his extraordinary rehabilitative efforts and his age, 48, the risk of recidivism is low, and he does not have a history of violence. He has taken full advantage of available educational and vocational training during his incarceration, positioning him for a successful transition into society.

Mr. Hernandez's successful completion of a post-release program from 2006–07 indicates he does well with structured support. *Id.* at ¶¶ 36, 60–61. He will be on supervised release for five years. Doc. 22 at 3. The supervised release conditions already in place, especially the condition authorizing warrantless searches for contraband such as firearms and drugs, *id.* at 4, provide additional protection to the community.

Section 3582(c)(1)(A) authorizes courts to impose additional terms of supervised release when a sentence is reduced, if appropriate, and that is the case here given the basis for the sentence reduction and to reduce the risk of recidivism and provide appropriate punishment. The Court will require Mr. Hernandez to live with his elderly parents for at least two years, the time he otherwise would have spent in prison, and to assist them in their daily activities; this will keep him busy and thus less likely to get back into trouble. A six-month period of home detention at the start of his release is also appropriate, given his history of recidivism and the reasons for the sentence reduction.

A sentence reduction to time served with additional conditions of supervised release satisfies the § 3553(a) factors. To facilitate planning for Mr. Hernandez's return

12

to society, the Court will stay this order for 28 days so the Probation Office can make appropriate arrangements for his release to the Eastern District of New York.

### IV. Conclusion

The Court has considered the defendant's circumstances and finds the need for Mr. Henriquez to provide care and assistance to his elderly and ailing parents taken together with his extraordinary rehabilitation constitute extraordinary and compelling reasons for a sentence reduction. The § 3553(a) factors also support early release.

Mr. Hernandez's sentence of imprisonment will be reduced to time served, stayed for 28 days. The terms of supervised release originally ordered remain in place, with the additional requirements that he live with his parents for at least two years and that for the first six months he be confined to home detention.

Judgement will be entered separately.

This the 6th day of December, 2021.

_____
UNITED STATES DISTRICT JUDGE